**NATIONAL FEDERATION OF THE BLIND OF COLORADO, INC. and Fraternal Order of Police, Colorado Metroplex, Inc., Plaintiffs,**

v.

**Gale A. NORTON, in her official capacity as Attorney General of the State of Colorado, Defendant.**

**No. CIV. A. 97–K–1396.**

United States District Court, D. Colorado.

Nov. 20, 1997.

**1372**

Michael W. Gross, Arthur M. Schwartz, P.C., Denver, CO, for Plaintiffs.

Richard A. Westfall, Atty. Gen.'s Office, General Legal Services Section, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This action involves a constitutional challenge to the Colorado Charitable Solicitations Act, Colo.Rev.Stat. § 6–16–101 *et seq.*, based on the recent enactment of § 6–16–105.3(*l*)(d). It is before me on cross-motions for summary judgment. New § 6–16–105.3(1)(d) regulates paid solicitors of charitable contributions by requiring them to disclose to potential donors of their right under a different statute to rescind any agreement or pledge made within three days. By its terms, the provision was to have become effective on July 1, 1997. It has been enjoined, however, pending resolution of this challenge.

Plaintiffs contend the disclosure requirement violates the First and Fourteenth Amendments to the United States Constitution. Because it was enacted without a severability clause, Plaintiffs maintain the entire Act is subject to invalidation. Alternatively, Plaintiffs argue the disclosure provision should be severed from the remainder of the Act and struck as unconstitutional.

Jurisdiction is conferred by 28 U.S.C. § 1331. I grant the motion of Plaintiffs and deny Defendant's motion as moot.

## I. *THE STATUTE AND APPLICABLE LEGAL STANDARDS.*

On April 24, 1997, Governor Romer signed House Bill 97–1309, which amended the Colorado Charitable Solicitations Act, Colo.Rev. Stat. §§ 6–16–101 through 6–16–113, by the addition of a new section 6–16–105.3. Section 6–16–105.3 provides:

**6–16–105.3. Solicitations by telephone.** (1) In addition to any other disclosure required for solicitations by telephone under section 6–16–105, a paid solicitor as defined in section 6–16–103(7) who makes an oral solicitation to any person by a telephone call received in Colorado regarding a charitable contribution shall make the following oral disclosures as part of the telephone solicitation:

\*      \*      \*      \*      \*      \*

(d) A statement that the person to whom the solicitation is made shall have the right to rescind any agreement or pledge to make a charitable contribution within the time period specified in section 6–16–106.

Section 6–16–106, in turn, provides that "a contributor shall have the right to cancel his agreement or pledge to contribute ... until 12 midnight of the third business day ... after the day on which the contributor receives a written confirmation of the contribution." Colo.Rev.Stat. § 6–16–106(1)(b). The right to rescind is not limited to agreements and pledges solicited by paid fundraisers and applies generally to all solicitations regardless of the fundraiser's professional or nonprofessional status.[1]

Plaintiffs National Federation of the Blind of Colorado and Fraternal Order of Police are nonprofit corporations as defined by Colorado law. Because they rely on paid solicitors to promote their charitable purposes through direct telephone contact with Colorado citizens, they are subject to the Act and, specifically, to § 6–16–105.3(1)(d).

Plaintiffs claim § 6–16–105.3(1)(d) constitutes both an impermissible content-based, restriction and a prior restraint of protected speech. They further claim the provision is overbroad and discriminates against charities based on their use of professional, rather than nonprofessional, solicitors in violation of the Fourteenth Amendment's Equal Protection Clause.

---

**1.** The failure of a paid solicitor to comply with the Act's disclosure requirements does, however, provide an independent basis for rescission (*see* § 6–16–106(1)(a)) and subjects the solicitor to penalties including misdemeanor and felony criminal charges under § 6–16–111.

■ Over the past two decades, in a trilogy of cases, the Supreme Court has held that solicitation of charitable contributions constitutes fully protected speech that may be regulated only when narrowly tailored to further a compelling state interest. *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 799–800, 108 S.Ct. 2667, 2679–80, 101 L.Ed.2d 669 (1988); *Secretary of State v. Munson*, 467 U.S. 947, 966, 104 S.Ct. 2839, 2852, 81 L.Ed.2d 786 (1984), *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632, 100 S.Ct. 826, 833–34, 63 L.Ed.2d 73 (1980). The admittedly commercial relationship between a charitable organization and its paid fundraiser does not subject regulation to the lower standard applicable to "commercial" speech. *Riley*, 487 U.S. at 795–96, 108 S.Ct. at 2676–77 (test for fully protected expression applies because speech of professional fundraisers, even if "commercial" in the abstract, does not retain its commercial character "when it is inextricably intertwined with otherwise protected speech")(citing *Schaumburg*, 444 U.S. at 632, 100 S.Ct. at 833–34 (regulation of a solicitation "must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech")). Nor is the test different because a regulation compels speech rather than silences it. Both restrictions alter the content of speech and the Supreme Court has declared the distinction to be without constitutional significance. *Riley* at 797, 108 S.Ct. at 2677–78;

In *Riley*, the Supreme Court recognized that regulations distinguishing between professional and nonprofessional fundraisers and requiring only the latter to make unfavorable disclosures discriminate against small or unpopular charities which generally must rely on professional fundraisers to solicit contributions. 487 U.S. at 800–01, 108 S.Ct. at 2679–80. The "predictable result" of such regulations is that professional solicitations will prove unsuccessful where identical solicitations carried out by unpaid employees or volunteers will not. *Id.* Accordingly, the Court will strike down mandatory disclosure provisions directed toward professional fundraisers where "more benign and narrowly tailored options [were] available." *See id.*

## II. DISCUSSION.

■ Under the *Riley* trilogy, the question in the present case is whether § 6–16–105.3(1)(d) is narrowly tailored to the General Assembly's stated purpose of fraud-prevention. I find that it is not.[2]

Even if the Attorney General could establish the necessary nexus between the disclosure requirement and the prevention of fraud (a connection not at all clear in my mind),[3] there are certainly more benign and less burdensome options available to combat fraud by educating the donating public about their rescission rights. In *Riley*, for example, the Supreme Court struck down a North Carolina statute requiring professional fundraisers to disclose to potential donors the percentage of charitable contributions actually turned over to charity in order to dispel alleged misperception that money goes in greater-than-actual proportion to benefit

---

**2.** We take the law as we find it, not as we would have it. This decision is not a demonstration of judicial activism. On the contrary, my personal preference would be to have the state assist me avoiding all forms of telephonic solicitation at home or in the office. It has been said that all solicitation tends to be meretricious.

**3.** It is important to distinguish between the prevention of fraud, which is the Assembly's stated goal, and buffering high-pressure solicitation tactics. While requiring paid fundraisers to begin each telephone solicitation by telling the donor he has a three-day "cooling-off" period in which he can rescind any pledge to contribute addresses the latter, its nexus to the former is tenuous. The State argues the cooling-off period allows potential donors to investigate solicitors for fraud. However, other provisions of the Charitable Contributions Act, unchallenged by Plaintiffs, already address this by requiring paid fundraisers to furnish potential donors with written confirmation and a series of anti-fraud disclosures before they may attempt to collect on a telephone contribution. These disclosures include the fundraiser's name, address, employer, and, "in capital letters of no less than ten-point, bold-faced type," disclosure identifying the paid solicitor as a paid solicitor or professional fundraiser. Colo.Rev.Stat. § 6–16–105(1) & (1)(c). While I offer no opinion as to the constitutionality of these provisions in this case, they may well be sufficiently tailored to the goal of fraud prevention to withstand strict judicial scrutiny. Their existence, however, weakens the proffered fraud-prevention rationale for § 6–16–105.3(1)(d) by showing it to be superfluous.

**1374**

charity. Instrumental to the Court's decision was its finding that North Carolina could publish the financial disclosure forms it already required professional fundraisers to file and which set forth this information, thereby educating the public without burdening those fundraisers' rights to communicate the message of their choice to potential donors. 487 U.S. at 800, 108 S.Ct. at 2679. In addition, the Court noted "vigorous enforcement" of laws prohibiting professional fundraisers from obtaining money through fraud was another more narrowly tailored means of accomplishing the state's goals than dictating the content of protected speech. *Id.*

Both examples apply in the instant case as well. The State of Colorado could itself publish or otherwise publicize the rights of donors to rescind telephone contributions, thereby educating the public without burdening the free speech rights of a specific category of charitable fundraisers. The vigorous enforcement of speech-neutral disclosure requirements and existing laws prohibiting fraud by paid fundraisers will also further the State's interests without infringing on these rights.

The State of Colorado has offered no reason for requiring only paid fundraisers to educate donors about the cooling-off period and their right to rescind. The right extends to charitable solicitations regardless of the professional or nonprofessional status of the solicitor. By mandating that only paid fundraisers tell donors they have three days to rescind their pledge (implying, erroneously, that they will be bound by their pledge *after* the three-day period expires), § –16–05.3(1)(d) harms and discriminates against only those charities that rely on paid fundraisers. The State offers no reasoned basis for the distinction and I see none.

### III. *CONCLUSION.*

In sum, the only justification offered for the content-based restriction at issue is the State's interest in educating the donating public of its statutory rescission rights. Considering the negative and false implication of a statement that contributors have "only" three days to rescind a pledge, together with the dubious nexus such "education" has to the stated goal of preventing fraud, I find the State's interest insufficient to warrant the

burden on free speech it imposes. There are other, less restrictive and less discriminatory ways of educating the public which Colorado must employ before it may dictate the content of otherwise free and protected speech in this manner. Accordingly, I find the disclosure mandated by Colo.Rev.Stat. § 6–16–105.3(1)(d) unconstitutional.

■ House Bill 97–1309 contained no provision for the severability of any portion of the amendments found to be unconstitutional. However, the Act itself does. Colo.Rev. Stat. § 6–16–113. So, too, Colo.Rev.Stat. § 2–4–204 is a generally applicable statute providing for severability. If, according to these statutes, any provision of the Act is found to be unconstitutional by a court of competent jurisdiction, the remaining provisions shall remain valid unless the connection between the licit and illicit provisions are inextricable in terms of legislative intent or functional implementation. With respect to the first exception, no legislative intent is articulated. With respect to the latter, it is evident that the licit portions of the statute can be executed in accordance with its stated purpose.

I hold that Colo.Rev.Stat. § 6–16–105.3(1)(d) is severable from the Act and that it violates the First and Fourteenth Amendments to the United States Constitution. Accordingly, judgment shall enter in favor of Plaintiffs and against Defendant in this case. Defendant's Motion for Summary Judgment is denied as moot.